USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Alejandro YOSEPF BATISTA,

                          Petitioner,

                -against-

Kenneth GENALO, in his official capacity as
Field Office Director of New York, Immigration
and Customs Enforcement; Markwayne MULLIN
in his official capacity as Secretary of Homeland
Security; Todd BLANCHE, in his official capacity
as Attorney General.,

                          Respondents.

1:26-cv-05408-MKV

ORDER DISMISSING PETITION FOR
HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

This case concerns the current detention of Petitioner Alejandro Yosepf Batista, a non-citizen of the United States, pursuant to 8 U.S.C. § 1226(a). Petitioner initiated this action by filing a petition for a writ of habeas corpus under Title 28 United States Code Section 2241. [ECF No. 1]. Thereafter, the Court ordered Respondents (the "Government") to show cause why the Petition should not be granted and for Petitioner to file a Reply. [ECF No. 4]. Thereafter, Petitioner filed an Amended Petition. [ECF No. 8 ("Amended Petition" or "Am. Pet.")]. In response, the Government filed a memorandum of law in opposition, [ECF No. 13] (the "Opp'n"), supported by a declaration of Immigration and Customs Enforcement ("ICE") officer Dmitry Rousseau, [ECF No. 12] (the "Rousseau Decl."), and a response ("Response") with attached exhibits. [ECF No. 11]. Petitioner filed a reply ("Reply") with attached exhibits. [ECF No. 14]. For the reasons set forth below, the Amended Petition is dismissed without prejudice for failure to exhaust administrative remedies.

## BACKGROUND

Petitioner is a native and citizen of the Dominican Republic.  Rousseau Decl. ¶ 3.  He unlawfully entered the United States on November 21, 2024 in Texas.  Am. Pet. ¶ 9; Rousseau Decl. ¶ 4.  On the day of his illegal entry, he was arrested by local police officers from Maverick County, Texas and charged with criminal trespass in violation of Section 30.05(d)(1) of the Texas Penal Code.  Rousseau Decl. ¶ 5.  On December 17, 2025, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody and served him with a warrant for arrest and a Notice to Appear ("NTA") charging him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Rousseau Decl. ¶¶ 7-10; *see also* Response, Ex. 1, NTA [ECF No. 11-1].  Thereafter, ICE released Petitioner on his own recognizance and Petitioner was enrolled in ICE's Alternative to Detention ("ATD") program.  Rousseau Decl. ¶¶ 8, 10; *see also* Response, Ex. 2, Order of Release on Recognizance (Form I-220A) [ECF No. 11-2].

On January 3, 2025, ICE initiated removal proceedings by filing the NTA with the Executive Office for Immigration Review ("EOIR").  Rousseau Decl. ¶ 11.  On January 22, 2025, Petitioner appeared *pro se* at an initial master calendar hearing, which was adjourned to February 4, 2026.  Rousseau Decl. ¶¶ 12, 15.

On February 3, 2025, Petitioner pled *nolo contedere* to the pending state criminal trespass charge and was sentenced to time served of 25 days.  Rousseau Decl. ¶ 13; Reply, Ex. 1 [ECF No. 14-1].  While released on recognizance, between May 2025 and November 2025 Petitioner missed four self-report check-ins with the ATD program and was ultimately terminated from the ATD program on December 5, 2025.  Rousseau Decl. ¶¶ 14, 16-19.  Nonetheless, Petitioner appeared for his master calendar hearing on February 4, 2026, where he requested more time to retain an attorney.  Rousseau Decl. ¶ 20.  His next hearing was ultimately rescheduled for June 25, 2026.

Relevant here, on May 18, 2026, Judge Castel in an unrelated case in the Southern District of New York ruled on a challenge under the Administrative Procedure Act ("APA") that ICE did not properly implement a change in policy that significantly broadened ICE's ability to make arrests at immigration courthouses. *See Afr. Communities Together v. Lyons*, No. 25-cv-6366 (PKC), __ F. Supp. 3d __, 2026 WL 1382944, at *1, *8 (S.D.N.Y. May 18, 2026). Thus, Judge Castel concluded with respect to the APA challenge before him that ICE was required to follow the previous and more restrictive 2021 guidance document (the "2021 Policy") concerning civil immigration enforcement actions at immigration courthouses with respect to three immigration courthouses in Manhattan, including the immigration courthouse at 290 Broadway, New York, NY. *See id* at *8. The 2021 Policy provides in pertinent part that "in the absence of hot pursuit, a civil immigration enforcement action also may be taken in or near a courthouse against an individual who poses a threat to public safety if: (1) it is necessary to take the action in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location, and (2) the action has been approved in advance by a Field Office Director" among other supervisors. [ECF No. 8-1].

ICE asserts that, on June 24, 2026, in advance of Petitioner's hearing, it determined that Petitioner posed a threat to public safety based on his state conviction for criminal trespass and that it was necessary to arrest him in an immigration courthouse "because there was no safe alternative." Rousseau Decl. ¶¶ 22-23. Further, on the morning of June 25, 2026, the Field Office Director of ICE's New York City Field Office approved Petitioner's arrest and ICE cancelled Petitioner's release. Rousseau Decl. ¶¶ 24, 25.

Later that day, Petitioner attended his master calendar hearing at the immigration courthouse located at 290 Broadway, New York, NY. Rousseau Decl. ¶ 26. After the hearing, ICE

arrested Petitioner pursuant to a warrant. Rousseau Decl. ¶ 27; *see also* Response, Ex. 5, Arrest Warrant (Form I-200) [ECF No. 11-5].  ICE conducted a custody determination and concluded that Petitioner would remain detained pending his removal proceedings pursuant to 8 U.S.C. 1226(a). Response, Ex. 6, Notice of Custody Determination (Form I-286) [ECF No. 11-6].  On the custody determination form, Petitioner requested that an immigration judge review the ICE detention decision. *Id.*

That same day, while detained at 26 Federal Plaza, Petitioner filed his habeas petition. [ECF No. 1].  The next day, on June 26, 2026, he was transferred to Delaney Hall Detention Facility in Newark, New Jersey.  Rousseau Decl. ¶ 31. That day, a detained master calendar hearing and custody redetermination hearing was scheduled for July 1, 2026.  Rousseau Decl. ¶¶ 32-33. Petitioner, however, was not produced for the hearings, and the bond hearing before an immigration judge was adjourned to July 6, 2026 at the Varick Immigration Court.  Rousseau Decl. ¶ 36.

On July 6, 2026, Petitioner appeared *pro se* at his bond hearing at the Varick Immigration Court, although an attorney from the Bronx Defenders, Daad Sharfi, Esq., attended the hearing.[1] Rousseau Decl. ¶ 36.  At the hearing, Petitioner withdrew his request for a bond hearing without prejudice to give himself more time to confer with counsel.  Rousseau Decl. ¶ 36.  EOIR thereafter transferred the case to the Elizabeth Immigration Court in New Jersey.  Rousseau Decl. ¶ 35.  In his Reply, Petitioner notes that his immigration case is now docketed in Elizabeth New Jersey. Reply at 4, Ex. C.

---

[1] Ms. Sharfi avers that Bronx Defenders intends to represent Petitioner in his removal proceedings but that the assigned attorney has not entered an appearance and that she appeared at the hearing only because she happened to be in the courtroom that day.  *See* Declaration of Daad Sharfi ("Sharfi Decl.") [ECF No. 14-2].

Petitioner remains detained at Delaney Hall and, as far as the Court is aware, has not renewed his request for a bond hearing.  Rousseau Decl. ¶ 38; Reply at 4.

Despite failing to avail himself of a bond hearing, Petitioner argues that his current detention violates the Due Process Clause of the Fifth Amendment and the APA because there are no changed circumstances justifying his re-detention—*i.e.*, that he poses a danger or a flight risk. Am. Pet. ¶¶ 35-47.  Further, relying entirely on the decision in *African Communities Together*, Petitioner alleges that his arrest is in violation of the APA and the *Accardi* Doctrine, which provides that agencies are generally required to adhere to their existing regulations, *see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir.2020).  Specifically, he argues that ICE failed to properly comply with the 2021 Policy's requirements in arresting him at an immigration courthouse.  Am. Pet. ¶¶ 48-52.  Petitioner requests release pending adjudication, Am. Pet. ¶¶ 53-56, and that the Court order the Government to "immediately and unconditionally release" him.  Am. Pet. at 14.

## DISCUSSION

It is undisputed that ICE detained, and is currently detaining, Petitioner pursuant to Title 8 United States Code Section 1226(a).  The Government acknowledges that the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), "likely counsels treating Petitioner as subject to 8 U.S.C. § 1226."  Opp'n at 4 & n.2, 9 ("[P]etitioner is subject to discretionary detention under 1226(a).").  Petitioner does not argue otherwise.

Section 1226(a) provides that on a warrant issued by the Department of Homeland Security ("DHS"), an alien "*may* be arrested and detained pending a decision on whether the alien is to be removed from the United States" or may be released on bond or conditional parole.  8 U.S.C. §§ 1226(a)(1)-(2) (emphasis added).  "To secure release, the alien must show that he does not pose a

danger to the community and that he is likely to appear for future proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)). If detained, the alien may seek review of the initial custody determination by an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d).

Critically, the initial custody determination by ICE under Section 1226(a) is largely a matter of discretion that cannot be second-guessed by this Court. 8 U.S.C. § 1226(e); *Fontanelli ex rel. Bernal Garcia v. Francis*, No. 1:25-cv-07715 (JLR), 2025 WL 2773234, at *6, *8 (S.D.N.Y. Sept. 29, 2025) (noting Section 1226(e) prevents courts from "second-guessing ICE's Individualized custody determination" and that a bond hearing before an immigration judge is the appropriate venue for such a challenge). Of course, Section 1226(e) "does not preclude challenges to the extent of the Government's detention authority under the statutory framework as a whole" or "limit habeas jurisdiction over constitutional claims or questions of law." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (quotation omitted); *but see Mahdawi v. Trump*, __ F.4th __, 2026 WL 2090981, at *14-18 (2d Cir. July 21, 2026) (Menashi, J., concurring). Nevertheless, "'[d]ue process' is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal." *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002). And indeed, providing "the *right* to a hearing before an immigration judge" should ordinarily "satisf[y] due process." *Reno v. Flores*, 507 U.S. 292, 309 (2009) (emphasis in original).

Here, Petitioner initially requested, and thereafter was offered, an opportunity to have an immigration judge review ICE's initial custody determination. Response, Ex. 6, Notice of Custody Determination (Form I-286) [ECF No. 11-6]. However, Petitioner withdrew that request without prejudice and has not since renewed it. Rousseau Decl. ¶ 36. Since Petitioner has administrative remedies yet available, the Government argues that the Amended Petition should be dismissed

given Petitioner has failed to exhaust his administrative remedies.  Opp'n at 10-12.  The Government is correct.

"A habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention."  *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018) (citing *Monestime v. Reilly*, 704 F. Supp. 2d 453 (S.D.N.Y. 2010)).  The exhaustion requirement is prudential in nature and designed "to protect the authority of administrative agencies, limit interference in agency affairs, permit the agencies to develop the factual record to make judicial review more efficient, and to resolve issues to render judicial review unnecessary." *J.C.G. v. Genalo*, No. 24-cv-08755 (JLR), 2025 WL 88831, at *4 (S.D.N.Y. Jan. 14, 2025) (cleaned up).  A district court may excuse prudential exhaustion where: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

Petitioner argues that, absent a court ordered bond hearing, exhaustion should be excused as futile because his immigration case has now been docketed in New Jersey.  Specifically, he argues that because the immigration courts in New Jersey are not bound by *Barbosa Da Cunha*, and there is no Third Circuit equivalent, the immigration judges in New Jersey will not provide him the opportunity for a bond hearing but instead will treat him as subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) under the binding Board of Immigration Appeals decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  Reply at 4-5; *see also Matter of Garcia*, 28 I. & N. Dec. 693, 703 (BIA 2023) ("Immigration Judges, are bound to follow the precedent of this Board, the Attorney General, and the circuit court of appeals with jurisdiction over the

geographic region where a case occurs.").[2]  Thus, he argues, his request for a bond hearing would be futile without a Court order that he is entitled to one.

Petitioner's futility argument falls flat.  His speculation that the Government will fail to provide a bond hearing should he request one stands in stark contrast to the undisputed record evidence that he is detained under Section 1226(a).  Indeed, in its briefing, the Government repeatedly avers that a bond hearing will be provided to Petitioner should he request one.  *See* Opp'n at 2 ("Because petitioner is detained under § 1226(a), he may request and receive a bond hearing before an immigration judge at any time."); *Marshall v. Arteta*, No. 1:26-cv-04110-MKV, 2026 WL 1724311, at *4 (S.D.N.Y. June 15, 2026) (observing that "the Government's brief reads like an invitation to a bond hearing").  And significantly, the Government has maintained this position even after Petitioner's immigration case was transferred to New Jersey.  *See* Rousseau Decl. ¶ 35.  Thus, the Court declines Petitioner's invitation simply to presume that the Government will renege on its word and deny Petitioner a bond hearing should he renew his request.[3]

---

[2] Of course, it is undisputed that this Court retains jurisdiction over the habeas petition, which was filed while Petitioner was yet detained in the Southern District of New York, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), and this Court is no doubt bound by Second Circuit precedent.  *See Yan v. Almodovar*, No. 26-cv-2654 (JHR), 2026 WL 1973599, at *3 n.1 (S.D.N.Y. July 8, 2026).

[3] Even if an administrative bond hearing could not address Petitioner's claim concerning alleged noncompliance by ICE with its 2021 Policy reinstated by Judge Castel in the case before him, it remains true that a bond hearing could nonetheless moot this claim entirely.  The prudential exhaustion requirement is particularly apt given that the object of the extraordinary writ of habeas corpus "is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment."  *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153 (1923); *see also A.P.A. v. Arteta*, No. 26-cv-3334 (AS), 2026 WL 1587452, at *3 (S.D.N.Y. June 3, 2026) (noting that *Bilokumsky* is in accord with the modern doctrine that "unconditional release [under habeas] is generally granted only where the detention is substantively (not merely procedurally) improper, or where a procedural violation is 'so egregious, its consequences so grave, and the unlawful restraints already imposed on the petitioner's liberty so lengthy or severe that law and justice mandate unconditional discharge'") (quoting James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure*, 7th Edition, § 33.2).  Accordingly, administrative exhaustion here will serve to "permit the agencies to develop the factual record to make judicial review more efficient" concerning whether release is nonetheless appropriate on this basis should Petitioner file a renewed habeas petition.  *Fontanelli*, 2025 WL 2773234, at *5.  Further, the Court notes that it is, of course, not bound by Judge Castel's decision.  *See Catzin v. Thank You & Good Luck Corp.*, No. 15-cv-7109 (KBF), 2017 WL 11675149, at *2 (S.D.N.Y. Jan. 5, 2017) ("Of course, district court cases – even those from within this Circuit – are not binding authority on this Court.").

Accordingly, the Court, consistent with its own practice and practice in this District, *see Marshall*, 2026 WL 1724311, at \*4 (collecting cases), declines to consider Petitioner's claims—constitutional or otherwise—given Petitioner has a non-futile remedy in the form of a bond hearing that could render all his habeas claims moot (including his claim that his courthouse arrest was in violation of ICE policy) should he renew his request for a bond hearing.  *Michalski*, 279 F. Supp. 3d at 496 ("Because Michalski's bond hearing may provide him with the relief that he seeks—*i.e.*, his release—this Court concludes in the exercise of its discretion that Michalski must exhaust these avenues before seeking judicial relief."); *see also Fontanelli*, 2025 WL 2773234, at \*8 (holding petitioner must first administratively exhaust claims about "procedural irregularities" by ICE given they can be addressed at a bond hearing); *Joseph v. Decker*, No. 18-cv-2640 (RA), 2018 WL 6075067, at \*6 (S.D.N.Y. Nov. 21, 2018) (noting claims challenging DHS' "compliance with its own regulations" or other "procedural irregularities" can be remedied by an agency and warrant exhaustion) (cleaned up).

## CONCLUSION

For the foregoing reasons, the Amended Petition is DISMISSED without prejudice. Petitioner may file a renewed petition in the appropriate jurisdiction should he be denied a bond hearing upon request.

The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

**Date:   July 28, 2026**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**